UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLONY INSURANCE COMPANY, as successor via merger to PELEUS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>- against -<br><br>ACCREDITED SURETY AND CASUALTY COMPANY, INC.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Colony Insurance Company, as successor via merger to Peleus Insurance Company ("Colony"), by its attorneys, Gunnercooke US LLP, as and for its complaint against defendant Accredited Surety and Casualty Company, Inc. ("Accredited"), respectfully alleges, upon information and belief:

**NATURE OF THE ACTION**

1. In this action, Colony seeks to recover against Accredited the amount Colony was compelled to contribute to a settlement after trial on behalf of its insured, RM Construction and Development Corp. ("RM"), under a commercial general liability policy and an excess liability policy it issued to RM (collectively, "the Colony Policies"), in an underlying personal-injury lawsuit styled *Johnny Alexander Venegas Almendariz v. 508 Waverly LLC, et al.*, in the Supreme Court of the State of New York, County of Kings, under index number 525380/2020 (the Underlying Action"), due to Accredited's bad-faith failure to avail itself of the opportunity to settle the Underlying Action before trial on RM's behalf within the available limits of a commercial general liability policy and an excess liability policy that Accredited issued (collectively, the "Accredited Policies")

providing RM coverage as an additional insured primary to its coverage under the Colony Policies.

## THE PARTIES

2. Colony is a corporation organized and existing under the laws of the State of Nebraska with a principal place of business in the State of Illinois.

3. Accredited is a corporation organized and existing under the laws of the State of Florida with a principal place of business in the State of Florida.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201 due to diversity of citizenship and an amount in controversy exceeding $75,000, exclusive of interest and costs.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim in this judicial district.

## THE INSURANCE POLICIES

6. Accredited issued to Richmond Construction Inc. ("Richmond") a commercial general liability policy bearing policy number 1-TPM-NY-17-01239806, effective December 27, 2019, to December 27, 2020 (the "Accredited Primary Policy"), covering parties qualifying as an insured subject to the policy's terms and conditions up to an occurrence limit of $2,000,000.

7. The Accredited Primary Policy includes an endorsement entitled "Additional Insured — Owners, Lessees or Contractors — Scheduled Person or Organization," which states in part:

> **A. Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
>
> **1.** Your [Richmond's] acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

8. The Schedule of the aforementioned endorsement identifies the additional insured as follows: "As Required by Written Contract executed prior to any claim or 'suit.'"

9. The Accredited Primary Policy states that it provides primary insurance absent exceptions not applicable here.

10. Accredited issued a commercial excess liability insurance policy to Richmond bearing policy number 1-TPM-NY-17-01264111 effective December 27, 2019, to December 27, 2020 (the "Accredited Excess Policy"), covering parties qualifying as an insured subject to the policy's terms and conditions up to an occurrence limit of $3,000,000.

11. The Accredited Excess Policy covers as additional insureds those parties qualifying as additional insureds under the Accredited Primary Policy.

12. The Accredited Excess Policy includes a provision stating:

> When this insurance is provided to an additional insured pursuant to a written agreement in which the named insured has agreed to provide additional insured coverage on a primary, noncontributory basis, then coverage provided by this insurance to such an additional insured is subject to the following provision: This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under which the additional insured is covered as a Named Insured.

13. Colony issued to RM a commercial general liability insurance policy bearing policy number 103 GL 0030099-01, effective July 3, 2020, to July 3, 2021 (the "Colony

Primary Policy"), covering RM subject to the policy's terms and conditions up to an occurrence limit of $2,000,000.

14. The Colony Primary Policy includes a provision stating that the coverage provided is excess over any other primary insurance covering liability for damages arising out of the operations for which RM has been added as an additional insured.

15. Colony issued to RM a commercial excess liability insurance policy bearing policy number AR4236191, effective July 3, 2020, to July 3, 2021 (the "Colony Excess Policy"), covering RM subject to the policy's terms and conditions up to an occurrence limit of $3,000,000.

16. The Colony Excess Policy includes a provision stating that the coverage provided is excess over any other insurance absent exceptions not relevant here.

**THE PROJECT**

17. At all times relevant herein, 508 Waverly LLC ("Waverly") hired RM to act as general contractor as respects a project to perform certain construction work at premises owned by Waverly located at 508 Waverly Avenue, Brooklyn, New York ("the Project").

18. RM subcontracted with Richmond Construction Inc. ("Richmond") to perform certain of the Project work (the "Subcontract").

19. The Subcontract required Richmond to procure and maintain commercial general liability and excess liability insurance covering RM as an additional insured on a primary, non-contributory basis.

20. Richmond subcontracted certain work required under the Subcontract to JW Salinas Corp. ("Salinas").

## THE UNDERLYING ACTION

21. In the Underlying Action, Johnny Alexander Venegas Almendariz ("Almendariz") sought damages against Waverly and RM for injuries he allegedly sustained on December 14, 2020, in the course of employment with Salinas while performing work for the Project that Richmond had subcontracted to Salinas.

22. Almendariz was allegedly injured when he fell from an elevation of more than ten feet causing his left leg to be impaled by rebar and to sustain other alleged injuries resulting in surgery to his left hip and back, along with resulting economic damages.

23. Accredited agreed to defend and indemnify RM as an additional insured under the Accredited Primary Policy in the Underlying Action on a primary, non-contributory basis.

24. Accredited agreed to indemnify RM as an additional insured under the Accredited Excess Policy in the Underlying Action on a non-contributory basis upon exhaustion of the Accredited Primary Policy occurrence limit.

25. In a June 3, 2024 report, counsel retained by Accredited to defend RM in the Underlying Action advised Accredited that a damages verdict in the Underlying Action above the combined $5,000,000 limits of the Accredited Policies would be sustainable and that Almendariz's counsel had demanded $12,000,000 to settle the action.

26. By Order dated February 27, 2025, the Underlying Action court granted Almendariz's motion for summary judgment as respects liability under Labor Law § 240(1) against RM.

27. Accredited failed to make any offer to settle the Underlying Action until April 17, 2026, a month before the action was scheduled for trial, when it offered $650,000.

28. At a May 13, 2026 mediation, the mediator recommended that Accredited offer $4.95 million to settle the Underlying Action, which he advised RM's defense counsel with a high degree of confidence that Almendariz would accept. Accredited nevertheless failed to increase its offer at the mediation.

29. By letter dated May 14, 2026, to Accredited's claims administrator, Tradesman Program Managers, Colony, by its counsel, demanded that Accredited settle the Underlying Action within the Accredited Policies' combined $5,000,000 limits and communicated its position that Accredited's failure to do so would amount to a breach of its fiduciary duty to Colony as RM's primary insurer.

30. By letter dated May 14, 2026, to RM's defense counsel, Almendariz's counsel advised that Almendariz would accept $5,000,000 to settle the Underlying Action if offered on or before May 18, 2026.

31. On May 19, 2026, during jury selection for the Underlying Action, Almendariz's counsel advised RM's defense counsel that Almendariz would still accept $5,000,000 to settle the Underlying Action and the assigned judge advised RM's defense counsel that Almendariz would accept less than $5,000,000 to settle, leading defense counsel to advise Accredited that $4,500,000 or something close to that amount would suffice to settle the case.

32. Accredited nonetheless refused to offer more than $1,500,000 to settle the Underlying Action before trial.

33. After the trial, the jury awarded Almendariz $30,000,000 in damages against RM.

34. To settle the matter after trial, Almendariz agreed to accept $9,750,000, to which Accredited contributed the Accredited Policies' combined $5,000,000 limits and Colony paid the remaining $4,750,000 under the Colony Policies.

**AS AND FOR A CAUSE OF ACTION**

35. Colony repeats all previous allegations made herein.

36. As the insurer providing RM with the primary layers of coverage in the Underlying Action under the Accredited Policies, Accredited owed Colony, as the insurer providing RM with the next layers of coverage in the Underlying Action under the Colony Policies, a fiduciary duty to endeavor in good faith to resolve the Underlying Action within the Accredited Policies' combined occurrence limits.

37. By failing to avail itself of the opportunity to settle the Underlying Action within the Accredited Policies' combined occurrence limits before trial despite its knowledge of facts indicating that a trial verdict against RM exceeding those limits would be sustainable and was reasonably likely, Accredited acted with reckless disregard of Colony's interests and thereby breached its fiduciary duty to Colony.

38. Accredited's aforesaid breach of its duty to Colony resulted in Colony having to contribute $4,750,000 to settle the Underlying Action.

39. Colony is thus entitled to a judgment against Accredited in the amount of $4,750,000, plus interest.

**WHEREFORE**, Colony demands that the Court issue a judgment against Accredited in the amount of $4,750,000, plus interest, and that it grant such other and further relief as it deems proper.

Dated: New York, New York
August 24, 2026

GUNNERCOOKE US LLP

_____________________________

Max W. Gershweir, Esq.
Attorneys for Plaintiff
475 Park Avenue South – 23rd Floor
New York, New York 10016
646.440.8375